OTTO FORKE v. ALFRED HOMANN.

Decided November 25, 1896.

**1. Libel—Words Actionable Per Se—Officer Appropriating Public Funds.**
The publication in a local newspaper, concerning a candidate for re-election as school trustee, of an appeal to vote for the opposing candidate because: "Then you can be assured that in the future your portion of the county available school fund will not again melt away $37.15, on so short a distance as from the hands of the father-in-law to the hands of the son-in-law, and be compelled to content yourself with the thin excuse that it was but a small mistake," the application and meaning being properly explained by averment, implied a charge of embezzlement or misapplication, by an officer, of public school funds, and was actionable without allegation or proof of special damages.

**2. Same.**
Such charge is so actionable because it tended to charge the plaintiff with a crime under our laws,—misapplication of public funds.

**3. Same.**
It is also actionable because imputing want of integrity to an official.

**4.  Same.**

A libel, to be actionable per se, need not in express terms charge a crime.  If it implies that an offense was committed and could be so understood by those reading the publication, it is per se libellous.  (Belo v. Fuller, 84 Texas, 453; Zeliff v. Jennings, 61 Texas, 466.)

**5.  Same—Damages.**

General damages, including wounded feelings and mental suffering, are recoverable in such case without allegation or proof of special damages; and the law will, without proof, imply that some damages resulted.  (Zeliff v. Jennings, 61 Texas, 466; Rea v. Harrington, 58 Vt., 188; Belo v. Fuller, 84 Texas, 453.)

**6.  Libel—Pleading—Evidence Showing Who Was Meant—General Demurrer.**

Under an allegation that the publication referred to him, not specially demurred to, plaintiff could prove that he was not the candidate commended to the voters by the publication without specially alleging it.

**7.  Privileged Communication—Candidate for Office.**

When a public officer, though a candidate for election, is falsely charged with a crime, or the defamatory words falsely impute a dereliction of duty and defame his character and standing as an official, the publication extends beyond the domain of privileged communication.

**8.  Libel—Offset—Malicious Prosecution.**

A counter-claim arising from an alleged malicious prosecution of an action for criminal libel, though the prosecution was at an end, cannot be offset against a civil suit for libel.

**9.  Same**

A claim for damages for malicious prosecution of a civil suit will not lie unless the prosecution complained of has ended favorably to the party seeking the relief.

**10.  Evidence—Experts—Examination of Accounts.**

In action for libel of a public officer, custodian of public funds, and with reference to their keeping, evidence of experts who have examined such officer's books, with reference to the condition of the funds in his official keeping, was admissible in his behalf.

**11.  Libel—Evidence—Effect on Plaintiff.**

One who knows that certain conduct of the plaintiff was traceable to the publication of the libel, may testify to that fact.

**12.  Libel—Absence of Malice—Actual Damages.**

If defamatory words charge an actionable crime and there be an entire absence of malice in fact, actual damages may nevertheless be recovered.  (Belo v. Fuller, 84 Texas, 453.)

**13.  Exemplary Damages—Verdict for Actual Only.**

The issue of malice as involved in the claim for exemplary damages in an action for libel is eliminated where the verdict awards only actual damages.

**14.  Libel—Charge.**

See applicant's brief for charges in action for libel held to present no error.

**15.  Libel—Fact Case.**

Verdict and judgment for plaintiff in action for libel held supported by the facts.

**16.  Verdict—Correction of.**

It is not error for the court, with the assent of the jury, to correct the form of an informal verdict on its rendition.

**17.  Court and Jury—Urging Agreement.**

It was not error for the court to remark to the jury that he thought they ought to agree as they were so near it.

APPEAL from the District Court of Comal County. Tried below before Hon. EUGENE ARCHER.

*J. D. Guinn* and *J. B. Dibrell*, for appellant.—In all cases where the alleged libelous matter complained of is not per se libelous, it devolves upon the pleader to allege and prove special damages before a recovery can be had.

Allegations in plaintiff's petition show that alleged libelous matter referred to some person or persons who were candidates for office in the city of New Braunfels, but who were not on the People's ticket. This being the case, it devolved upon the pleader to allege that the plaintiff in this case was a candidate for election, and that he was not a candidate on the People's ticket. The petition not having alleged that the plaintiff was not a candidate on the People's ticket it was incompetent for him to have made this proof.

The libelous matter declared on in plaintiff's petition was not within itself defamatory, and the petition not having set forth any special damages to plaintiff and there being no proof of any special damages, it was the duty of the court to have instructed the jury to return a verdict for the defendant. In view of this state of facts, the plaintiff was not entitled to recover for mental anguish. Railway v. Richmond, 73 Texas, 568; Pub. Co. v. Jones, 83 Texas, 308; Townshend on Libel and Slander, secs. 197, 345, and notes; 13 Am. and Eng. Ency. of Law, 436; Waul v. Hardie, 17 Texas, 553; Eborn v. Zimpleman, 47 Texas, 522; Railway v. Burke, 55 Texas, 340; Glascock v. Shell, 57 Texas, 224; Newell on Def. Slan. and Lib., 856, sec. 29, 866, sec. 39.

The court erred in not sustaining defendant's second and third special exception, urged in his second amended original answer, to the effect that the alleged libelous matter was not amenable to the construction given it by plaintiff's innuendoes, and that the force and effect given said publication by plaintiff's innuendoes are strained, immaterial and not justified. Said publication does not charge embezzlement or official misconduct, and to so hold gives such publication a forced and unnatural construction. Townshend, Lib. and Slan., sec. 335; Starkie on Lib. and Slan., 418.

The plaintiff's petition having set forth the fact that he was a candidate for office in the city of New Braunfels, makes the alleged libelous matter a privileged communication. Townshend, Lib. and Slan., sec. 197, 345; Printing Co. v. Copeland, 64 Texas, 358; Holt v. Parsons, 23 Texas, 20; Railway v. Richmond, 73 Texas, 576; Const. of Texas, art. 1, sec. 8; 13 Am. and Eng. Ency. of Law, 420.

The court erred in sustaining the special exception urged by plaintiff in his first supplemental petition, whereby paragraphs 567 and 568 of defendant's second amended original answer was stricken out. In the said paragraphs of said amended original answer the defendant alleged that plaintiff had brought this suit through malice and fraud, and with the malicious intent to annoy and harass defendant, and that by reason

of such fact the defendant had been put to great expense and trouble in making his defense. That the plaintiff carried out his malicious design to injure and harass defendant, had instituted a criminal prosecution for libel against the defendant, and that by reason of such conduct of plaintiff the defendant had been damaged in the sum of five hundred dollars, which were plead in offset to plaintiff's cause of action. The matter sought to be plead as a counter claim against plaintiff grew out of the cause of action sought to be set up against the defendant and was a part and parcel of the same transaction, and was proper matter to be plead by defendant, and to serve as a cause of action against plaintiff, and to be plead in this cause in offset against any damage that might have accrued to plaintiff. Rev. Stats., arts. 649, 650.

The admission of testimony to the effect that a committee examined plaintiff's books at one time and that same were correct was that character of immaterial testimony which is calculated to and did mislead the jury, in that they would infer that from the fact that his books were correct at the time of said examination; therefore there was no mistake. In other words, it gave the books against which there was no claim of incorrectness undue prominence over the admitted fact that a mistake had been made.

The court erred in permitting the witness Ad. Giesecke, the father-in-law of plaintiff, over defendant's objection, to answer the following questions propounded to him by plaintiff's counsel to-wit: Question.— How did it (the alleged libelous matter) affect him, plaintiff, from what you saw? Question.—State how Alfred Homann acted, and what he did immediately after this article appeared? Witness having given the following answers, namely:

Answer.—Well, he neglected his business and was running from one lawyer to the other, and he was generally disturbed all over. The question solicited the opinion of the witness, and was clearly inadmissible.

The court erred in giving to the jury the following instruction contained in its general charge, to-wit: "If you should find from the evidence that the words complained of referred to the plaintiff, and that they imputed to him and charged him with the offense of embezzlement, and that the same was caused to be published and circulated by the defendant as alleged in the petition, then I charge you that plaintiff is prima facie entitled to recover,—I mean he is entitled to recover unless something has been shown which repels that presumption." Because if the said charge is correct as a general proposition it should have limited the recovery to nominal damages. Pub. Co. v. Jones, 83 Texas, 306; Hirshfield v. Bank, 83 Texas, 459; Railway v. Faber, 63 Texas, 344; 23 Am. & Eng. Ency. of Law, 436.

The court erred in its general charge to the jury on the question of exemplary damages, because there was no evidence offered by the plaintiff tending to show that the defendant had been actuated by malice or by any intent to injure the plaintiff in his reputation, good name or

Vol. XIV.   Civil 43

business; because while the jury did not find any exemplary damages against defendant, yet the said charge was calculated to and did influence the jury in finding their verdict. Railway v. Faber, 63 Texas, 344; Railway v. Richmond, 73 Texas, 573; Behee v. Railway, 71 Texas, 428.

The court erred in giving to the jury the following special instruction requested by the plaintiff, to-wit: "You are further instructed that if the reading public might reasonably have understood the language in question to mean that Alfred Homann, in connection with Ad. Giesecke, embezzled thirty-seven dollars and fifteen cents of the school fund, and a reasonable construction of the language would be that this is what was meant by it, and you find from the evidence that plaintiff did not embezzle said money but that there was a mistake made, defendant Otto Forke will not be justified in making a publication in such a case as can be reasonably construed to mean embezzlement; and if you so believe you will find a verdict in favor of the plaintiff, Alfred Homann." Because said special instruction takes from the jury the power of construing the libel and confines their inquiry to how the reading public understood said publication; and because said special instruction tells the jury to find for plaintiff, provided the reading public could reasonably infer from said publication that the plaintiff was being charged with the crime of embezzlement; and because it took from the jury the discretion of finding for the defendant if they should find that the said publication could be reasonably construed to mean that plaintiff had made a mistake in regard to the public school fund.

The court erred in giving to the jury the following special instruction requested by plaintiff's counsel, to-wit: "As to whether or not the language is libelous in this case the question is not what defendant Forke meant by the language or what meaning he intended the language to convey, but the real question is what meaning the language actually does convey, and what the reading public might reasonably suppose he intended the language to mean." Because said special instruction tells the jury that it was immaterial what the defendant meant by the said publication or what idea he intended to convey by said publication, when one of the material inquiries was as to the defendant's intent and what he meant by said publication or what idea he intended to convey by said publication. The inquiry of the jury was by this special instruction confined to how the reading public understood said publication. Railway v. Richmond, 73 Texas, 576.

The court erred in giving to the jury the following special instruction requested by plaintiff's counsel, to-wit: "If you believe from the evidence that the alleged libel is false, and that the defendant published the same wilfully and maliciously for the purpose of injuring plaintiff, then you may find for the plaintiff in addition to actual damages, exemplary damages and punitory damages, in such amount as you deem a proper penalty for the prevention of such libelous acts, not to exceed one thousand dollars."

The court erred in refusing to give to the jury the following special instruction requested by defendant's counsel, to-wit: "You cannot infer malice from the language of the publication in the newspaper testified to in this case; and unless malice has been otherwise proven to your satisfaction you cannot find malice in this case; and unless there was malice on the part of the defendant you cannot find punitory damages against the defendant."

The court erred by refusing to give to the jury the following special instruction requested by defendant's counsel, to-wit: "A malicious intent on the part of the person charged with libel, in making and publishing the libelous matter, is a necessary ingredient to support an action for libel, and is one of the facts to be found by the jury, and when the alleged libelous matter is not within itself defamatory it devolves upon the plaintiff who seeks to maintain the action for libel to prove by extrinsic facts the existence of malice, and if from the evidence you do not find in this case any malice on the part of the defendant in making and publishing the alleged libel, you should find for the defendant." Townshend, Lib. and Slan., secs. 241 to 245; Railway v. Richmond, 73 Texas, 575; Bradley v. Heath, 12 Pick., 164.

The court erred in permitting the verdict of the jury to be changed so as to alter its intent and change the finding of the jury, because the court had charged the jury upon exemplary damages, and had told them to say if they found exemplary damages, and the original verdict was a finding of exemplary damages. By sending the jury back and by amending the verdict, the jury was made to find actual damages.

The court erred in making the remark to the jury, that he thought they ought to agree as they were so near it.

*Statement* (from appellant's brief).—The action of the court complained of in the two foregoing assignments was as follows: "After the trials of this case the jury had been out several hours, the plaintiff and defendant agreed that the jury might return a sealed verdict and hand it to the clerk, and that they might then disperse and report again in the morning, when the court would receive their verdict. This they did, after the jury having been out about twenty hours, and were allowed to disperse, and after about fifteen hours therefrom, upon the court assembling, they responded to their names and the verdict was read in their presence, which was as follows: "We, the jury, find the defendant guilty, and assess the fine at twenty-five dollars. F. Sattler, Foreman."

The court remarked to them that the verdict was informal and that they should retire and make it formal; whereupon the defendant objected to their returning any other verdict, because they had been separated, and had told to outside people what their verdict was, and that it was generally known what same was, which was a fact that they had so told it, and that it would be improper for them to return any other verdict, and especially that they could not change the same so as to change the substance thereof;

but the court overruled the objection and sent the jury back, remarking to them that they should assess the damages in accordance with the charges, that is, definitely what amount actual and what amount exemplary damages,—to which ruling the defendant thereupon excepted. Thereupon the jury, after being out about two hours more, returned into court the following verdict: "We, the jury, find the defendant guilty, actual damages twenty-five dollars; exemplary damages, none. F. Sattler, Foreman." Thereupon the court again remarked that the same was informal, and wrote out the following verdict: "We, the jury, find for the plaintiff twenty-five dollars actual damages," and told the foreman to sign it provided that was the verdict they wished to return; whereupon F. Sattler signed the same as foreman.    To all this action of the court the defendant objected and excepted, on the ground that each of the said two last verdicts were different in substance and contrary to the first verdict; and that the finding of the jury showed the jury incompetent and unsuited as jurors in this case, and the action of the court was improper, all of which objections were by the court overruled. At the defendant's request the jury were polled, and each juror having the verdict read to him answered that this was his verdict.    The court then asked them if they agreed to the verdict written out, and they said they did.

*F. J. Maier*, for appellee, cited the following authorities: That the publication was a libel per se, and no allegation of special damages necessary: Townshend on Slander and Libel, secs. 176, 177, 384; Wordward v. Dowsing, 2 Man. & Ry., 74; Montgomery v. Knox, 3 So. Rep., 211; Betten v. Holt, 11 Pac. Rep., 713; O'Brien v. Clement, 15 M. & W., 435; Hillhouse v. State, 3 Humph., 389; Price v. Whitely, 50 Mo., 439; Massuer v. Dickens, 35 N. W. Rep., 349; Eviston v. Cramer, 3 N. W. Rep., 392; Thorley v. Kerry, 4 Taunt., 355; Clegg v. Laffer, 3 Mo. & Sc., 727; Pub. Co. v. Jones, 83 Texas, 302; Zeliff v. Jennings, 61 Texas, 458; Pub. Co. v. Hallam, 59 Fed. Rep., 530, 8 C. C. A., 201; Pub. Co. v. Maloney, 33 N. E. Rep., 921; Smith v. Pub. Co., 55 Fed. Rep., 240, 5 C. C. A., 91; Patch v. Tribune Assn., 38 Hun., 368; Cotula v. Kerr, 74 Texas, 89; Woody v. State, 16 Texas Crim. App., 253; Rue v. Mitchell, 2 Dall., 58; Pokrok Pub. Co. v. Ziskorsky, 42 Neb., 64; Starkie on Slander and Libel, *157-158.

That damages for malicious prosecution could not be offset: Townshend on Slander and Libel, sec. 362a; Bliss on Code Pleading, secs. 389, 386; Battell v. Wallace, 30 Fed. Rep., 229; Seely v. Cole, 1 Wright, 681; Fellermann v. Dolan, 7 Abb. Pr., 395; Richardson v. Northrup, 56 Barb., 105; Schnaderbeck v. Worth, 8 Abb., 37; Barhyte v. Hughes, 33 Barb., 320; Macdougall v. Maguire, 35 Cal., 274; Carothers v. Thorp, 21 Texas, 359; Couch v. Parker, 1 White and W. C. C., sec. 438.

On objection to the evidence of the committee who examined plaintiff's books: T. and P. Coal Co. v. Lawson, 31 S. W. Rep., 843; Cunningham v. Holt, 33 S. W. Rep., 981.

As to charge on exemplary damages: Turton v. N. Y. Rec. Co., 144 N. Y., 144; Pub. Co. v. Ziskorsky, 42 Neb., 64; Childers v. Pub. Co., 105 Cal., 284; Pub. Co. v. Conron, 38 Pac. Rep., 423.

Appellee also submitted the following cross assignments: The court erred in not permitting appellee to prove by John Marbach and six other citizens of Comal County, after stating that they read the article in question and formed an opinion to whom it referred, that the words son-in-law referred to plaintiff Alfred Homann and father-in-law to County Judge Giesecke, that the witnesses so understood the words and this was the first impression said words made upon their minds and that other people and the reading public understood that said words referred to appellee and Ad. Giesecke. · Starkie on Slander, 321; Townshend on Libel and Slander, secs. 131, 133, 139; Dickson v. State, 28 S. W. Rep., 815; Bradstreet v. Gill, 9 S. W. Rep., 753; Pub. Co. v. Hallam, 8 U. S., C. C. A., 210; Pub. Co. v. Jones, 83 Texas, 302; Bourke v. Warren, 2 C. & P., 307; Rue v. Mitchell (U. S.), Dall., 574; Fleet wood v. Curley, Hob., 267; Binford v. Young, 115 Ind., 174; Commonwealth v. Morgan, 107 Mass., 199; Berry v. Massey, 104 Ind., 486; Fawsett v. Clark, 48 Md., 494; Elsworth v. Hayes, 71 Wis., 427.

The court erred in not permitting appellee to prove by John Marbach and six other citizens of Comal County, after stating that they read the article in question and formed an opinion as to what was meant by the words, "Your portion of the county available school fund will not again melt $37.15," that each of said witnesses understood said words to mean that appellee, in connection with Ad. Giesecke, had embezzled $37.15 of the county available school fund, that this is what said words meant, was so impressed upon their minds; that this is what other people and the reading public understood them to mean, and was the natural inference to be drawn from those words. Same authorities.

The court erred in not permitting appellee to prove by Arthur Conrads, after stating that he read the article in question, that he heard people of Comal County state that there must be some crookedness in these offices or Mr. Forke would not have published said article, and that part of the public looked upon the plaintiff, on account of said publication, as a man who would do crooked work. Park v. Detroit Free Press, 40 N. W. Rep., 731; Stafford v. Morning Sun, 68 Hun., 467; Nelson v. Wallace, 48 Mo. App., 193; Gray v. Ellzroth, 37 N. E. Rep., 551.

Counsel for appellant filed a motion for rehearing, based upon the propositions contained in their original brief, which was overruled. An application by appellant for writ of error was refused by the Supreme Court.

FISHER, CHIEF JUSTICE.—*Statement of Case.*—This is a suit for libel by appellee against appellant for actual and exemplary damages resulting from the libelous publication. Verdict and judgment was in appellee's favor for twenty-five dollars, actual damages.

The following facts are shown by the record: On the 13th day of March, 1895, Otto Forke, appellant, wrote and caused to be published in the New Braunfels Zeitung, a newspaper published and circulated in Comal County, Texas, the following article: "Take care, you voters! Vote only for such candidates for school trustees as are on the people's ticket, then you can be assured that in the future your portion of the county available school fund will not again melt away $37.15, on so short a distance, as from the hands of the father-in-law to the hands of the son-in-law, and be compelled to content yourselves with the thin excuse that it was but a small mistake.   Otto Forke."

Said newspaper had a circulation of about six hundred in the town of New Braunfels and about twelve hundred in Comal County.

The appellee at that time, before and since, resided in New Braunfels, Comal County, and was at that time school treasurer of New Braunfels, and had the custody of the school monies belonging to said town, and was then a candidate for the office of school trustee.

Ad. Giesecke was then the County Judge and superintendent of public schools in Comal County, and appellee was then and is now his son-in-law.

There is evidence that warrants the conclusion that no others but Judge Giesecke and appellee, as father-in-law and son-in-law, in Comal County, handled school monies at that time, and the inference that arises from the facts in evidence is that the reading public in Comal County understood the libelous publication to refer to appellee and Judge Giesecke. The appellee was not then a candidate on the people's ticket, but was a candidate for election as school trustee.

Previous to this the Commissioners Court of Comal County, in apportioning the school fund of the county, made a mistake of $37.20 in the amount of such fund that was due the city of New Braunfels.   This mistake was owing to an error in calculation by Judge Giesecke as County Judge, and was thereafter shortly discovered by him, and he called the attention of the Commissioners Court thereto and the mistake was corrected.   There was no misapplication or embezzlement of this sum by the County Judge or the appellee, and the conclusion is warranted that the appellant could by reasonable inquiry have learned the truth as to the item of $37.15, and that the appellee was not guilty of any act that was calculated to induce a person of ordinary prudence to believe that he had embezzled or misapplied said sum of $37.15.   And we find, in this connection, that so much of said publication that implies a charge of embezzlement or misapplication of this sum by appellee or Judge Giesecke was false and untrue.

The facts warrant the finding that appellee, by reason of the publication, suffered distress of mind, shame and humiliation.

*Opinion.*—The first question that arises is whether the publication is libelous per se.   The appellant contends that it is not, and as no special

damages were alleged his demurrer raising this question should have been sustained.

The petition, by averments of innuendoes, explains the publication as applying to appellee and that it means that he had embezzled or misapplied public school funds to the amount of $37.15, and that in this way it was understood by the readers of the paper in Comal County. This construction is consistent with the language of the publication. It implies that a portion of the school fund which passed through the hands of the father-in-law—Judge Giesecke—and the son-in-law—appellee— has not been accounted for by them, and that they disguised their failure to account for this sum under the false pretense that a mistake of some sort was made concerning it. Those reading this article would infer that the father-in-law and son-in-law were entitled to handle the school funds in some official capacity, and that they had misapplied or appropriated thirty-seven dollars and fifteen cents of such fund, and undertook to account for it under the false excuse that a mistake had occurred. Those reading the publication who were acquainted with the relationship existing between the plaintiff and Judge Giesecke and of the official positions held by each would readily construe the publication as referring to them officially. 13 Am. & Eng. Ency. of Law, 391 to 393.

Giving this construction to the publication, the language is libelous and actionable per se in two aspects, in that it tends to charge the appellee with a misapplication of public funds, which is a crime in our law—13 Am. & Eng. Ency. of Law, 349—and imputes to him a want of integrity as an official. 13 Am. & Eng. Ency. of Law, 355 and 363. A libel, to be actionable per se, need not in express terms charge a crime. If the words employed consist of a statement which would imply that an offense was committed, and could be so understood by those reading the publication, it is per se libelous. Belo v. Fuller, 84 Texas, 453; Zeliff v. Jennings, 61 Texas, 466.

If this is the proper construction of the libel, general damages were recoverable, without allegation or proof of special damages. 13 Am. & Eng. Ency. of Law, 434; Zeliff v. Jennings, 61 Texas, 466. And in this connection it is proper to say that wounded feelings and mental suffering may be considered as elements of damages. Zeliff v. Jennings, 61 Texas, 467; Rea v. Harrington, 58 Vermont, 188 and 189; Belo v. Fuller, 84 Texas, 453. This much is said because there seems to be some question raised as to the right to recover for mental suffering in this case. In all cases of libel where an actionable crime is charged, the law will infer some injury to the reputation and character of the libellee, and without proof will imply that some damages resulted from the publication. The damages sustained in this respect are compensatory in character, and in connection therewith may be considered those that result from injured feelings and mental suffering. Belo v. Fuller, 84 Texas, 453.

There is no merit in the point raised in the fifth assignment of error. The plaintiff alleged that the publication was defamatory and that it

referred to him and that it was false. It was permissible under these averments for him to prove that he was not a candidate on the people's ticket. But, however this may be, the assignment of error does not complain that the court overruled a demurrer to the petition on the ground that it was not alleged that the plaintiff was not a candidate on the people's ticket, but complains of evidence admitted to the effect that plaintiff was not a candidate on the people's ticket, for the reason that this fact was not alleged. The plaintiff's petition was good when tested by a general demurrer, and if defective in the respect noticed it should have been questioned by a special exception. And this not being done, the defendant cannot test the merits of the petition by objections to the evidence, except in a case where it is essential that a fact must be pleaded in order to show a cause of action. The evidence objected to is not proof of a fact which was necessary to be established in order for the plaintiff to recover.

Appellant contends that as the plaintiff was a candidate for election to a public office the publication was privileged. Reprehensible conduct of a public officer or one who is a candidate for a public office is subject to criticism, if made in good faith for the purpose of questioning his fitness for office, but when a public officer is falsely charged with a crime, or the defamatory words falsely impute a dereliction of duty and falsely defame his character and standing as an official, the publication extends beyond the domain of privileged communication, and is as actionable and as reprehensible as would be any publication directed towards him as an individual which accuses him of crime. 13 Am. & Eng. Ency. of Law, 419, 421.

Appellant's fourth assignment of error complains of the ruling of the court sustaining demurrers to that part of defendant's answer which asks for damages against plaintiff on the ground that plaintiff was actuated by malice in bringing his suit and that the plaintiff had maliciously instituted a criminal prosecution, which was at an end, against defendant for the same libel. The counter-claim which arose from the prosecution of the criminal action is not a proper matter of offset to the suit for libel, nor can it be pleaded in reconvention, as it did not grow out of the prosecution of the civil suit. The counter claim for damages based upon the alleged malicious prosecution of the civil suit could not be urged in reconvention, because of the well settled principle that an action for malicious prosecutien will not lie unless the prosecution complained of has ended favorably to the party seeking the relief. 14 Am. & Eng. Ency. of Law, 28, 32, 42. The civil prosecution was pending when the counter-plea was interposed and, as we are informed by the judgment rendered, terminated favorably to the plaintiff below and appellee here. Consequently this result presents an insuperable objection to the action asserted by the counter-claim.

The evidence of the experts who examined the books of appellee which showed the condition of the funds in his official keeping was admissible. They were public records and were open to examination by

appellant, Forke, and they were admissible upon the ground that he could have from an examination of these records ascertained that the item of $37.15 was accounted for, and making the publication in the face of this record was evidence that could be considered by the jury as showing a want of probable cause in publishing the libel and that he did so in reckless disregard of the truth, which could have been ascertained by reasonable inquiry. This evidence was also admissible as tending to disprove the crime which was charged to the appellee. These experts were appointed to examine into the official records and books of appellee as treasurer of the school funds, and as the result of this examination the books were found to be correctly kept. The books of appellee showing that all the items and sums which came into his hands officially were properly entered and accounted for were proper to be considered by the jury as evidence showing a performance of his official duties and as negativing the misapplication of the public funds.

The evidence of witness Giesecke stating what effect the publication of the libel had upon appellee with reference to his conduct was admissible. If the witness knew that appellee's conduct in certain particulars was traceable to the publication of the libel, he could testify thereto.

In response to those assignments of errors that complain of the charge of the court and the refusal to give certain charges, it may be said that some of the points raised are in effect disposed of by what has been previously said construing the libel and the effect to be given it, and as to the others they may be disposed of by a few general observations which are pertinent. If the libelous matter is actionable per se, malice may be inferred, without direct proof thereof,—13 Am. and Eng. Ency. of Law, 426,—and special damages need not be alleged,—13 Am. and Eng. Ency. of Law, 435,—and if the defamatory words charge an actionable crime and there be an entire absence of malice in fact, actual damages may nevertheless be recovered. Belo v. Fuller, 84 Texas, 453.

So far as the issue of malice may have been involved in that phase of the case which claims exemplary damages, it is eliminated by the verdict of the jury, which expressly limits the recovery to actual damages.

There was no error in the charges complained of, nor in refusing those requested by appellant.

The verdict and judgment are supported by the facts, and there was no error in permitting the verdict to be corrected by the jury, nor were they influenced by the remark of the court as complained of in the twenty-second assignment.

*Judgment affirmed.*

Writ of error refused.