## 7404

### GREENVILLE COUNTY v. CITY OF GREENVILLE.

1. CONTRACTS—PAROL EVIDENCE.—When a contract of sale of second-hand machinery has been reduced to writing, stipulating the price and the amounts to be credited against the agreed price, parol evidence is not admissible to show other expenditures have been necessary to put the machinery in good condition with a view of crediting these amounts against the contract price, nor to show the value of the machinery, in absence of fraud or gross inadequacy, nor to show when the machinery was actually delivered.

2. COUNTERCLAIM—COUNTIES.—In an action by a county for a money judgment, a counterclaim cannot be set up by the defendant in the form of an account against the county not duly itemized, verified, filed with and audited by county board of commissioners.

Before DeVore, J., Greenville.    November term, 1908. Affirmed.

Action by Greenville county against City of Greenville. From judgment for plaintiff, defendant appeals.

*Mr. Wm. G. Sirrine,* for appellant, cites: *Stipulation by seller that so much repairs would put machinery in good condition amounts to warranty:* 30 Ency., 129, *et seq.,* 173.

*Messrs. Haynsworth, Patterson & Blythe,* contra: *Evidence tending to include other items than those mentioned in the writings tends to vary the writing:* Wigmore, sec. 2425; 46 S. C., 411. *The time of delivery can only be shown by parol when not mentioned in the writing:* 72 S. C., 372. *Simple account cannot be set up as counterclaim against county:* Code of Proc., 171; 24 S. C., 543; 81 S. C., 243.

December 11, 1909.    The opinion of the Court was delivered by

. MR. CHIEF JUSTICE JONES.   On December 12-14, 1904, the County of Greenville sold to the City of Greenville its road equipment, consisting of engines, scrapers, tools, tents, camping outfit, supplies on hand, etc., for six thousand dollars.

A bill of sale describing the property, with schedule, was executed to the city December 12, and on December 14, 1904, it was further stipulated in writing, as a part of the bill of sale, that in making settlement the county "shall be charged with the suits of convict clothing already ordered and about to be delivered, and also with the amount due Good Roads Machinery Company for certain extra parts necessary to put the equipment in fair condition, amounting to $69; and also with the freight on certain extra parts, now in the hands of the Southern Railway Company, amounting to $61.83." The complaint to recover the amount due conceded that the defendant was entitled to credit for $3,000 paid by the city to the Good Roads Machinery Company as balance of original purchase price due by the county, also for $427.61 paid November 15, 1905, in addition to the $69 and $61.83, items mentioned in the contract above, as well as the amount due for suits of clothing ordered by the county, and about to be delivered at the date of the sale.   The jury rendered a verdict for $2,622.74 in favor of plaintiff.

The contest was as to certain other counterclaims sought to be set up in favor of the defendant. Defendant contends that it expended $539.46 in putting the machinery in good repair and $49.25 freight on new parts, and that those sums were properly set off against the plaintiff's claim.   The Circuit Court ruled that by the terms of the contract, which could not be varied by parol testimony, defendant was not entitled to any set off on these items for any amount exceeding the sums stipulated in the contract.   We agree with the Circuit Court in this ruling. The contract did not provide that defendant should have credit

for any sum expended to put machinery in fair condition, but that it should have credit for expenditures in the matter to the extent of $69 for extra parts and $61.86 freight.

The sale was of second-hand machinery after inspection by the buyer, and schedule of the property and the writing must be held to express the contract of the parties in the absence of fraud or deceit or misrepresentation by the seller.

Hence, it was proper to reject evidence as to such extra parts and freight thereon in excess of the amounts stipulated in the contract, *Lagrone* v. *Timmerman*, 46 S. C., 411, 24 S. E, 290  For the same reason, it was proper to refuse to allow the witness, W. H. Cely, to answer the question: "When you came to investigate the machinery, was it worth the price you paid for it?"  The answer could only have been an opinion as to the value of articles as to which the price was stipulated in writing.   While there was a plea by defendant that the value of the road outfit, in its then condition, did not exceed five thousand dollars, the defense is unavailing against the written contract, there being no such a gross failure or inadequacy of consideration as suggests fraud.   It appears that an expenditure of less than ten per cent. of the agreed price put the second-hand machinery in good condition.   Moveover, the express stipulation limited plaintiff's liability in this regard.

The Court also refused to allow the following questions to be answered by defendant's witness, C. H. Mahon: "What agreement did you have with Mr. Speegle (the county supervisor), as to the date the city would accept the convicts to begin work for city?" and the following question to defendant's witness, W. H. Cely: "Do you remember the date the city agreed to take charge of the county convicts?" The assignment of error is that there was nothing in the writing going to show this fact.   Other writings introduced in evidence showed that on November 26, 1904, the county supervisor addressed to the mayor of Greenville a paper in these words: "In consideration of the fact that the city of

Greenville has furnished to the County of Greenville, S. C., their city convicts, and it having been agreed that the county was to return to the city the same number of days' work that the county has received from the city prisoners, and also in lieu of the fact that there is no available funds for public road improvement, and that you have asked that the number of days' work due the city by the county be paid for the city prisoners, I hereby agree to turn over to the city authorities all the city and county convicts under my charge, to be worked by the city until each and every day due the city by the county shall have been paid in full. You will please take charge immediately of all county convicts, together with the city convicts, and keep same until you are fully paid for the number of days' work due the city."

On December 14, 1904, the date of the bill of sale for the road machinery, the following instrument was executed and delivered by the county supervisor:

"Know all men by these presents, That I, J. E. Speegle, supervisor of Greenville county, do hereby acknowledge that the said county is indebted to the city of Greenville for eight (8) thousand days of work furnished and rendered to said county by various convicts sentenced by the mayor's court of said city and turned over to me to be worked on the public works of said county.

"And in consideration of the aforesaid indebtedness, and in pursuance of an agreement heretofore entered into between the mayor of said city and the county board of commissioners for Greenville county, I do hereby surrender, turn over and give in charge of said city all of the city and county convicts now in my custody, and who are at this time engaged in working at and near the rock quarry belonging to the city of Greenville, near Buncombe street, to manage, control and receive the labor of the aforesaid convicts until the number of days' work done by the city for the county as aforesaid have been fully repaid."

These writings show that the agreement was to turn over the convicts on December 14, 1904.

There was evidence on the part of defendant that the convicts were moved to the city convict camp on December 14, 1904, and were put to work building the city stockade under the control of the city authorities. Witness was unable to state that the alleged agreement, sought to be introduced, was made after the written agreements of December 14, 1904.

It was, therefore, not error to reject the testimony, as it was inconsistent with the stipulation in the written contract stating precisely what the county undertook to allow as a credit on the price of machinery.

The rulings of the Court restricting counterclaims, or credits against the county to the items specified in the contract of sale, is supported by another reason. A counterclaim must be such as a judgment might be had thereon against the county in this action. Sec. 171, Code of Procedure.

The alleged claim of the city against the county for expenditures for the guarding and keeping of the convicts from December 14, 1904, to January 1, 1905, not being provided for as a credit on the purchase price of the machinery by the terms of the contract of sale, should be treated, if it exists, as an independent claim against the county, which could only be recovered against the county by filing the same, duly itemized and verified, with the county board of commissioners, as required by secs. 806 and 808, Civil Code, and could not be the subject matter of a counterclaim in this action. Such claim has not been filed and audited as required by law. *Jennings* v. *Abbeville County,* 24. S. C., 543; *People's Bank* v. *Goodwin,* 81 S. C., 425, 62 S. E., 1100. There are other exceptions to the charge, to the refusal to charge certain requests and to the refusal of

motion for new trial. But they are all controlled by the views above announced.

The judgment of the Circuit Court is affirmed.